Thank you, your honor. My name is David Ness. I'm appearing for the appellant, Patrick Henderson, and I would like to reserve three minutes for rebuttal. Thank you. Okay, this case involves application of recent United States Supreme Court case United States v. Heyman. In 2009, my client Patrick Henderson was convicted of illegally possessing a firearm in violation of United States Code section 922g, an offense that carries a maximum penalty. So if I can leap ahead just for a moment. Sure. Assuming that required a right to jury to extend supervised release punishment beyond the statutory maximum, I can see how that would help you with two of the specifications. But the third specification, which involved a guilty plea in state court, where presumably your client was advised of his right to a jury, would not be affected, would it? I think it would, judge. I believe in the possibility that, well, it's not a possibility. It happens not too infrequently where someone is charged, for example, with drugs in state court and then is also charged with those same drug offenses in federal court. Simply because the client would have pled guilty in state court doesn't obviate his rights to have a trial in federal court on the same drug. What's your best authority for that, though, right now? What's your best authority for that if it's a supervised release term, though? That's what we're dealing with here. In the supervised release? I'm proceeding on the assumption that because he was ultimately sentenced over the 10-year statutory maximum under Apprendi in that line of cases, he was entitled to a jury if you're going to send someone over the 10 years. Well, but aren't you asking for an extension of Haman? Because it's a plurality opinion. And Justice Breyer, what do you think Justice Breyer would do with a burglary charge here, which is, I think, what Judge Rakoff is asking. I mean, the facts of our case is he's charged with a burglary in state court. He entered a plea of guilty, waived his right to a jury trial there. So what, and Justice Breyer is the fifth vote, but he doesn't, but there isn't, it's a plurality opinion for what you're arguing. I agree with that. And I am arguing for an extension of Haman because Haman didn't deal with this particular issue. Haman dealt with a different statute. And the facts here are not a jury trial. He's not charged with federal charges that are the same as his violation of supervisory release here. It's state charges where he pled guilty and waived his right to a jury trial, right? That's correct. But if this court was to go along with my underlying argument that he is entitled to the protections that were outlined in Apprendi because he's now serving a sentence of 11 years on, for an offense that carries a 10-year maximum, then I don't think the mere fact that he pled guilty in state court would obviate his right to have a jury trial in federal court. Go ahead, Judge Kristen. I'm sorry. Judge Callen, did I interrupt you? I'm sorry. Yes, go ahead. Can I just revisit your premise? You said he's been sentenced to more than 120 months on the underlying offense. And it seems to me that that's not correct. The additional sentence isn't a post-sentencing reform act. We know that the sentence he's getting now really was for a different offense. It's for violating the terms of supervised release, right? We said that in purpose years ago. So I'm not sure that I buy the initial premise that we're in Apprendi land because I'm not sure that I buy the premise that he's received over 120 months for the original offense. Could you speak to that? Well, I would speak, I would, in response to that, I would note that in the Johnson case, I think we both cited in our briefs, the Supreme Court said that a sentence imposed on revocation is part of the penalty for the original offense. So if it's part of the penalty for the original offense and the original offense only carries a statutory maximum of 10 years, then if you're going to increase that, what you're ultimately doing is you're giving Mr. Henderson 11 years on the original offense. I appreciate that, but I'm asking you to go specifically to our authority that talks about the fact that the sentence imposed at supervised release is for violating the condition of supervised release and not for the underlying offense. Right, but I think that authority conflicts somewhat with Johnson, and I think that the best case that the government has on its side is the Purvis case that was decided in 1991, which of course was even before Apprendi. It is pre-Apprendi, and you make that point, but why does that matter here? My argument is that if you take Apprendi and Hayman together, I think it just naturally follows that if you are ultimately going to sentence someone to a term of more than 10 years for an offense that carries a statutory maximum of 10 years, that does raise Apprendi problems. Am I right that Purvis did not deal at all with the constitutional issues, whereas Apprendi and Hayman are clearly based on constitutional underpinnings? Purvis was just about statutory interpretation, and it may well be that Section 3583 authorizes a separate punishment from a statutory standpoint, but that's different, is it not, from the constitutional issues that we've had since Apprendi. Yes, I think that's true. Your constitutional argument is premised on the notion that your client is receiving additional punishment for the underlying offense, right? Yes, yes. I think I understand your response. Thank you. Okay, thank you. Judge Callahan, I think you're muted. I can't hear you, Judge. You're muted. Judge Callahan, I cannot hear you. You're muted. Or maybe it's something else. Yeah, I think it's something other than the mute, because even when the mute button goes off, we still can't hear you. Hi, this is Sam, the tech. Judge, you may want to just try reconnecting really quick, because, yeah, it does appear that you're not muted, but we cannot hear you. I'm sorry, Judge, I'm not sure what you're trying to ask, because we can't hear you. I think the best thing to do would just be to disconnect from the call and reconnect. Okay, I'm back. Can you hear me? Yep. Yes. What it said was that the host muted me. Who's the host? So once we realized that we couldn't hear you, I tried muting you and unmuting you to see if that would fix it, and that's why you got that message. But before I had clicked that, there was still a problem. Okay. I now have really low volume for Judge Callahan. Can you all help with that, please? Judge Callahan, can you try saying a few words again? Good morning. Still pretty faint. I can certainly hear Judge Callahan, but it's pretty faint. If you could bump it up a little bit, that'd be really helpful. Okay, we'll do what we can. Okay, thank you. All right. So Monday morning is starting out Monday morning. Okay. All right. So we'll allow you to reserve the balance for rebuttal then. Okay. Thank you, Judge. Thank you. Good morning, Your Honors. May it please the Court. Caleb Haisley on behalf of the United States. The government is asking this Court to follow the 2nd, 4th, 5th, 8th, and 11th circuits and not extend Haymond beyond what the Supreme Court held when it found 3583K unconstitutional. We'd ask you to follow the leaves of your sister circuits and hold that the prior circuit precedent, which precludes this constitutional argument, or rather that have held that a sentence imposed for Pervis stands and must be applied in this case. I put to you the same question I put to your adversary. Pervis doesn't deal with the constitutional issue because it really didn't exist at that time. It was before Apprendi even. And so no one had really thought in the terms of that, but at least the plurality in Haymond seems to be addressing a situation that would apply equally well here. Would it not? I don't think so, Your Honor, because I think what, well, perhaps in the plurality, but of course we have to look at Justice Breyer's opinion for controlling. And what I think the Supreme Court was doing was they are taking 3583K out of the paradigm of supervised release rather than imposing Apprendi within the supervised release paradigm, if that makes sense. That would be possibly true of Justice Breyer. But would you agree that if the plurality was a five-person majority, then that would not be true? Well, certainly, Your Honor, and hypothetically in the future that might be the case law. But right now we have a situation where Haymond is limited by the plurality's own decision to 3583K and they are not addressing 3583E3, those bread and butter revocations under which Mr. Henderson was revoked. And therefore we have to look at Circuit President. And while not address Apprendi, there is the unpublished decision under Hernandez-Cervera, which looked directly at the constitutional issue post-Apprendi. Let me, and forgive me, it may be my ignorance, but I thought the whole point of non-published decisions were that they weren't to have any precedential value. They are the court dealing with the immediate case before and often in a way that eases the burden on the court and the dockets. But I don't see how a non-published opinion can be cited as if it were a precedent. And I apologize, Your Honor, if I was arguing that that was precedent. The logic, the court has looked at this issue post-Apprendi. I mean, Hernandez-Cervera, they looked at this decision post-Apprendi and found that Apprendi did not apply. And the very reasons why Apprendi don't apply are what Judge Kristen was talking about. Because we are not dealing with a punishment. Mr. Henderson was not being punished for his underlying criminal conduct. He was being punished under 3583E3 for his breach of trust to the court. And Congress established separate authorities for that. He is not being punished for the underlying criminal conduct and therefore Apprendi is not implicated because he's not being punished for something. I mean, he's being revoked for his breach of trust. And that already has a cap. That already has a statutory maximum written into 3583E3. And as long as it doesn't exceed that, then there isn't an Apprendi issue. If it tried to exceed the limits under 3583E3, I think there would be an argument under Apprendi. But because that's the statutory authority and he's being punished for the breach of the court's trust, not for the criminal conduct that resulted in his revocation, that's why there is no Apprendi argument in this particular case. And Heyman doesn't get us there. Let me ask you this. If Mr. Henderson, let's say we bite, hypothetically, I'm just saying hypothetically, that we bite and he agreed that we would be Heyman to this particular, you know, we go where no court has gone yet. Well, let's say we go there. And Mr. Henderson was charged with three violations of conditions of supervised release. If we found that the sentence was justified by the burglary plea, but questioned the degree of proof on the other two charges, would we have to remand the matter to the district court for that? I think that you could uphold the sentence of revocation based on the burglary convictions because that Sixth Amendment right attached in the state case. But how could that be when we don't know and only the district judge knows whether he added something to the sentence because of the specifications? I think it's not untypical of district judges when there are multiple specifications and one is more serious than the other to add a little bit on for the other specifications. Do we know anything about that in this case? Well, to the extent that the district court heard argument on the specific issue and before they imposed the sentence, I think that there is at least a little bit more knowledge about the district court's decision there. But again, because he's pled guilty, we're talking about somebody who is, I think, facing a range of 30 to 37 months, but was limited by the statutory max that's provided under 3583 E3 and was sentenced below that. And so I think based, again, on the admissions in the state court, that's proved beyond a reasonable doubt. And I think that the sentence could stand should that hypothetical of Judge Callahan be the situation that the court is facing. But ultimately... Well, what about the other? Let me throw with the other parade of horribles here that I would think that you might say. If we said, if we extended Haman then to supervise release, then jury trials would be required on a failure to report to probation or a failure to take a P test or any number of things. Is that right? That's right. If the court were to rule that the jury right attached to all revocations, including the bread and butter ones under 3583 E3, if a defendant in their underlying criminal conviction had been sentenced at or near the statutory max, you would be getting into that situation in every single case. And I think that's what Purvis, this court says in Purvis, sort of talks about how Congress was clear when it established these two separate statutory schemes, because to do otherwise and to sort of tack this term of supervised release in that time, which can be revoked into the statutory max of the underlying criminal conviction, would ensure that the most dangerous defendants, if they were sentenced near or at the statutory max, could never be properly supervised. And that's the parade of horribles that would go down this road if Haman were to be extended to 3583 E3 is individuals. And I'm not totally following. Forgive me. If supervised release is a separate criminal statute in the sense that violation of it leads to prison time, why don't you have a jury trial then? That seems to be Constitution 101. Well, it's not a criminal sentence, Judge. It's a mechanism of, again, breach of trust. It's Johnson. Breach of trust. You are going to prison, are you not? I always thought the theory was that it was preponderance because the judge could have sentenced the person to the max on the underlying offense. Instead, they gave them a benefit of supervised release. And if they violate the breach of trust, then then you revoke that and send them back to prison. But that's not what you're saying. You're saying, oh, no, it's a whole separate regime. And I think it allows people to be sent to prison for theoretically any amount of time. And certainly in this case, 15 months and in Hame in five years, without a jury, without any of the protections that we give in every other criminal context. No, Your Honor, because the conviction, the underlying conviction and the judgment in that case, which Congress authorizes the court to also impose supervised release, that is where the authority comes from. It is not a punishment for the new conduct, except for the fact that it's a breach of trust. Congress established supervised release to allow the district court judge who has the best facts and the best ability, like in this case, when they gave Mr. Henderson an opportunity after the first time he committed a crime in the state, after he came back from prison, the court let him remain in on supervised release and added a condition of mental health because the district court is trying to work with him on his And so to the extent that that's why Congress established it, and I think those are our limits. So we are asking you to do what the other courts have done and find that Haman was limited to K and not extend it to 3583. Thank you. All right, I will go back to the rebuttal. Mr. Ness. Thank you, Your Honor. I guess the first thing I'd go to is this whole thing about whether or not it's a criminal proceeding, revocation is a criminal proceeding. Of course, it's a criminal proceeding. The government in Haman tried to call it, I believe, the words were post-sentence adjudication. But it does operate, at least in a very small, limited number of cases like this one, where someone can go to prison beyond the time. No, but Mr. Ness, do you agree that the Supreme Court could have gone further on its own and did not? So you're asking us to go further, and it's actually going to be a newly constituted court. I mean, Justice Ginsburg, who was in the plurality. So at best, whoever's her replacement is in the plurality. We're still in the same place in Haman. We're not moving the dial. So, you know, tell me why I want to get reversed by the U.S. Supreme Court. I would argue that you would not get reversed by the United States Supreme Court, Your Honor. But they could have gone the way you're asking us to go now when they decided Haman. And so, but they didn't. But why would they judge? The E3 wasn't before them. I mean, isn't it kind of judicial practice 101, you narrowly answer the question that's before you, not go beyond that? And I think that's what Justice Gorsuch at least said in the pluralities. He said when considering the Apprendi issue, because they didn't need to, because they decided under the, I can't pronounce the case name, Al-Yin issue. And that's the way that they determined it. So they didn't have to go to Apprendi. And besides that, Apprendi wasn't even necessarily at issue because even with the five years, Mr. Haman, Mr. Haman's sentence would not have exceeded the 10-year max. Is Mr. Henderson's sentence constitutional under Justice Gorsuch's plurality opinion in Haman? Are you saying it's not? Am I saying what, Your Honor? I'm sorry. Well, is Mr. Henderson's sentence constitutional under Justice Gorsuch's plurality opinion in Haman? Is it constitutional under that? I would agree that the Gorsuch plurality did not reach the issue that I've raised here. But I think he danced, they danced around it. They didn't reach it because they didn't have to. But I think the Apprendi issue is something that's front and center in this case. And the other thing I would just point out too is there wouldn't be a parade of horribles here. As Justice Gorsuch pointed out in the plurality opinion, less than 1% of people ever get sentenced anywhere near, you know, up towards the statutory maximum. We're talking about a very small subset of cases. So I don't think I'm asking the court to invite a parade of horribles. And so in the plurality, Justice Gorsuch says, quote, only a jury acting on proof beyond a reasonable doubt may take a person's liberty. Now that may, you could argue that's dictum, not part of the holding, but to extent it is holding or an indication of what the plurality thought that it does apply to your sentence, right? Yes, yes, yes. Yes, I would agree with that. Right. We'd like to go over, but we can't. So thank you both for your arguments. And this is a motion to adjourn. Thank you.
judges: Callahan, Christen, Rakoff